UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO. 24-41 |
| CURTIS SQUIRE | SECTION: D (4) |

### ORDER AND REASONS

Before the Court is a Motion to Dismiss The Indictment filed by the Defendant, Curtis Squire.[1] The United States of America has filed an Opposition to the Motion, and the Defendant has filed a Reply.[2] After careful consideration of the parties' memoranda, the record, and the applicable law, the Court **DENIES** the Motion.

### I.   FACTUAL AND PROCEDURAL BACKGROUND

On March 8, 2024, Curtis Squire was indicted by a Grand Jury on a one-count Indictment for being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8).[3] The Indictment alleges that the Defendant knowingly possessed a firearm after having been convicted of a crime punishable by more than one year of imprisonment, specifically, a 2018 Louisiana conviction for conspiracy to distribute heroin, distribution of heroin, conspiracy to possess a firearm with a controlled dangerous substance, possession of a firearm with a controlled dangerous substance, conspiracy to obstruct justice, obstruction of justice, and conspiracy to possess stolen things; and a 2018 Louisiana conviction for simple burglary and

---

[1] R. Doc. 31.
[2] R. Doc. 36 and R. Doc. 39, respectively.
[3] R. Doc. 18.

unauthorized use of a motor vehicle.[4] He is currently awaiting trial on his federal felon in possession of a firearm charge.[5] On September 5, 2024, the Defendant filed the instant Motion to Dismiss The Indictment.[6]

The Defendant makes three main arguments in support of his Motion to Dismiss The Indictment: (1) that the United States Supreme Court's holdings in *New York State Rifle and Pistol Ass'n v. Bruen*[7] and *United States v. Rahimi*[8] dictate that § 922(g)(1) is unconstitutional under the Second Amendment; (2) that the statute is unconstitutionally vague; and (3) that the statute exceeds Congress's power to regulate under the Commerce Clause of the Constitution.[9]

In support of his first argument that the statute is unconstitutional in light of the United States Supreme Court's decisions in *Bruen* and *Rahimi,* the Defendant makes four further arguments: (1) that the statute is facially unconstitutional; (2) that the statute is unconstitutional as applied to persons like the Defendant; (3) that the statute is unconstitutional insofar as its prohibition is permanent; and (4) that the statute is unconstitutional as applied in the home.[10] To the extent that the Defendant premises all of his "subarguments" on the Supreme Court's decisions in *Bruen* and *Rahimi,* the Court addresses them as a whole.

The Defendant argues that "Under *Bruen*, 'when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects

---

[4] *Id.*
[5] Trial is set for February 3, 2025. *See* R. Doc. 41.
[6] R. Doc. 31.
[7] 597 U.S. 1, 142 S.Ct. 2111, 213 L.Ed.2d 387 (2022).
[8] 602 U.S. 680, 144 S.Ct. 1889, 219 L.Ed.2d 351 (2024).
[9] R. Doc. 31.
[10] R. Doc. 31-1 at 3.

that conduct.' . . . Moreover, if the plain text covers the conduct, '[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation.'"[11] The Defendant then argues that the Supreme Court applied *Bruen* in *Rahimi* and reaffirmed that "the appropriate analysis involves considering whether the challenged regulation is consistent with the principles that underpin our regulatory tradition."[12] The Defendant asserts that a court, faced with a similar challenge by a defendant, must determine whether the law is "relevantly similar" to laws that our tradition is understood to permit.[13] The Defendant contends, "While a Fifth Circuit panel has not yet decided a preserved § 922(g)(1) challenge, the Fifth Circuit has clearly recognized that *Bruen* effectuated a fundamental change in circuit jurisprudence, as evidenced by its decisions striking down other subsections of § 922(g) as unconstitutional under *Bruen*—subsections that, pre-*Bruen*, it upheld."[14] The Defendant then concludes that "post-*Bruen*, the constitutionality of § 922(g) became an open question in this Circuit."[15]  It is within this framework that the Defendant then argues that the statute is unconstitutional since the Government "cannot show historical laws that are relevantly similar to § 922(g)(1), and therefore cannot show that the statute is consistent with the principles that underpin the Nation's regulatory tradition."[16] The

---

[11] *Id.* at 4 (quoting *Bruen*, 597 U.S. at 17, 19, 142 S. Ct. 2111, 213 L.Ed.2d 387).
[12] *Id.* at 5 (quoting *Rahimi*, 602 U.S. at 692, 144 S. Ct. 1889, 219 L.Ed.2d 351).
[13] *Id.*
[14] *Id.* at 6. Following the filing of his Motion to Dismiss The Indictment, the Fifth Circuit addressed and ruled on a § 922(g)(1) challenge in *United States v. Diaz,* 116 F.4th 458 (5th Cir. 2024). Both the Government and the Defendant were provided the opportunity to brief the Court following that ruling. *See* R. Docs. 36 and 39, respectively.
[15] R. Doc. 31-1 at 7.
[16] *Id.* at 11.

Defendant then argues that even if § 922(g)(1) is constitutional on its face, it is unconstitutional as it applies to the Defendant because there are no founding-era laws disarming people with convictions similar to the Defendant. The Defendant then contends that the statute is unconstitutional both facially and as applied because the Government cannot show that a permanent firearm prohibition is consistent with the principles that underpin our regulatory tradition. Finally, the Defendant argues that § 922(g)(1) is unconstitutional as applied since the firearm in question was found in the Defendant's home and thus, at worst, "kept" a firearm but did not "bear" a firearm.[17]

In support of his second argument that the statute is unconstitutionally vague, the Defendant argues the statute cannot be enforced against him because it fails to provide fair notice of prohibited conduct and therefore is unconstitutional.[18] The Defendant advises that several courts have determined that certain subsets of felons fall outside the scope of § 922(g)(1). In light of these decisions from other courts, the Defendant concludes that "A statute that leaves 'grave uncertainty' about its reach—particularly when coupled with contradiction and confusion among courts as to its constitutionality—cannot pass Due Process muster."[19] Finally, while recognizing that "this argument presently is foreclosed" based on Fifth Circuit precedent, the

---

[17] *Id.* at 16-19.
[18] *Id.* at 19.
[19] *Id.* at 20.

Defendant argues that the statute is unconstitutional because it exceeds Congress's authority under the Commerce Clause.[20]

In response, the Government concurs with the Defendant's recitation of the test enunciated by the Supreme Court in *Bruen*, agreeing that the correct approach involves:

> A two-part analysis that focuses entirely on the Second Amendment's text, as informed by "historical tradition," with a special emphasis on how gun ownership rights were viewed at the time of the founding. First, a defendant must show that the conduct being regulated falls under the Second Amendment. Only once a defendant shows his conduct implicates the Second Amendment's plain text must the government "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation."[21]

The Government asserts that, while the Supreme Court has not yet considered *Bruen*'s effect on § 922(g)(1), it has "strongly hinted that the law remains constitutional."[22] The Government further points out that the Supreme Court, in *Rahimi*, "left open the possibility that the government may prohibit gun possession 'by categories of persons thought by a legislature to present a special danger of misuse [of a firearm].'"[23] The Government then points, in some detail, to the Fifth Circuit's recent decision in *United States v. Diaz*, in which the Fifth Circuit directly addressed a constitutional challenge to § 922(g)(1)'s felon prohibition.[24] The Government concludes that, "The Fifth Circuit's *Diaz* decision foreclosed Squire's facial challenge

---

[20] The Defendant recognizes that "this argument presently is foreclosed" based on Fifth Circuit precedent "but raises the issue here to preserve it for further review." *Id.* at 21 (internal citation omitted).
[21] R. Doc. 36 at 2 (quoting *Bruen*, 597 U.S. at 24, 142 S. Ct. 2111, 213 L.Ed.2d 387).
[22] *Id.*
[23] *Id.* at 2-3 (quoting *Rahimi*, 602 U.S. at 681, 144 S. Ct. 1889, 219 L.Ed.2d 351).
[24] 116 F.4th 458 (5th Cir. 2024).

to the constitutionality of § 922(g)(1) by establishing a broad class of felony predicates (i.e., those mirroring founding-era theft offenses) for which § 922(g)(1) permits firearm dispossession."[25] Finally, the Government argues that the Defendant's position that the statute is unconstitutional as outside the authority of the Commerce Clause is foreclosed by the Fifth Circuit's opinion in *United States v. Seekins*.[26]

In reply, the Defendant acknowledges that this Court is bound by the Fifth Circuit decision in *Diaz* but disagrees with the reasoning in that case and "notes this disagreement to preserve his claims for further review."[27] Further, the Defendant insists that his case is distinguishable from *Diaz* because he is facing a different predicate conviction than Diaz faced. The Defendant further argues that the Government opposes his Motion solely based on the *Diaz* holding and that he does not offer any historical evidence showing that any of the crimes for which *he* was convicted are analogous to founding-era capital felonies.[28]

## II.   LEGAL STANDARD

Federal Rule of Criminal Procedure 12 provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." Federal Rule of Criminal Procedure 12(b)(3) then provides:

> **Motions that Must be Made Before Trial.** The following defenses, objections, and requests must be raised by pretrial motion if the basis for the motion is then reasonable available and the motion can be determined without a trial on the merits:

---

[25] *Id.* at 6.
[26] No. 21-CR-10556, 2022 WL 3644185 (5th Cir. 2022).
[27] R. Doc. 39 at 8 n.2.
[28] *Id.* at 3-4.

> . . .
> (B) a defect in the indictment, or information; including:
> . . .
> (v) failure to state an offense; . . . .[29]

## III. ANALYSIS

### A. The Defendant's Argument that the Statute Is Unconstitutional Based on the United States Supreme Court's Decisions in *Bruen* and *Rahimi*.

The Court first concludes that the Defendant's Motion, which was filed pre-trial, was timely filed. The Court next turns to the substantive arguments raised by the Defendant in his Motion. For the reasons below, the Court finds that the Defendant's challenges to the constitutionality of 18 U.S.C. § 922(g)(1) are without merit.

The Defendant first argues that the statute is unconstitutional based on the Supreme Court's decisions in *Bruen* and *Rahimi*. However, the Defendant fails to establish that § 922(g)(1), which makes it unlawful for a felon to possess a firearm, violates the Second Amendment either on its face or as applied based on the test set forth by the Supreme Court in *Bruen*.[30] As the Defendant has acknowledged, this Court is bound by precedent. Since the filing of the Defendant's Motion, the Fifth Circuit has had the opportunity to consider a factually analogous challenge in *United States v. Diaz*.[31] The facts of that case are worth restating. In that case, law

---

[29] FED. R. CRIM. P. 12(b)(3)(B)(v).
[30] 597 U.S. 1, 142 S. Ct. 2111, 213 L.Ed.2d 387.
[31] 116 F.4th 458. For this reason, the Court rejects the Defendant's argument that *Bruen*'s framework "overruled prior Fifth Circuit precedent upholding § 922(g)(1)." R. Doc. 31-1 at 6. Even absent the *Diaz* decision, however, this argument fails. To make his argument, the Defendant relies on the Fifth Circuit's decision in *United States v. Rahimi,* wherein the court held that 18 U.S.C. § 922(g)(8), which prohibits firearm possession by those subject to domestic violence restraining orders, is unconstitutional under the Second Amendment. 61 F.4th 443 (5th Cir. 2023). However, on June 21, 2024, the Supreme Court issued its opinion in *Rahimi*, reversing the Fifth Circuit and concluding that

enforcement conducted a traffic stop of the car Mr. Diaz was driving.[32] A subsequent search of the vehicle revealed a firearm.[33] Mr. Diaz had prior convictions for theft of vehicle and evading arrest or detention with the vehicle, as well as for possession of firearm. As such, Mr. Diaz was charged with being a felon in possession of a firearm under § 922(g)(1).[34] At the trial court, Mr. Diaz move to dismiss the indictment, arguing that § 922(g)(1) is unconstitutional following *Bruen*.[35] First, Diaz asserted that his conviction under § 922(g)(1) was unconstitutional under the Second Amendment, both facially and as applied to him.[36] Second, he contended that § 922(g)(1) exceeds Congress's power under the Commerce Clause.[37] The district court denied the challenge; Mr. Diaz was tried and convicted, and he appealed.[38] The Fifth Circuit affirmed.

In reaching its decision, the Fifth Circuit first determined that the plain text of the Second Amendment covers the conduct prohibited by § 922(g)(1) and that the burden therefore shifted to the Government to demonstrate that § 922(g)(1) is "consistent with the Nation's historical tradition of firearm regulation."[39] The court's focus turned on whether there was a historical analogue to Diaz's prior conviction for car theft to support § 922(g)(1)'s prohibition. The court determined that Diaz's prior

---

§ 922(g)(8) is facially constitutional under the Second Amendment.[31] Accordingly, the Court finds little merit in the Defendant's suggestion that *Bruen* categorically rendered all firearm statutes unconstitutional.
[32] *Id*. at 462.
[33] *Id*.
[34] *Id*.
[35] *Id*.
[36] *Id*.
[37] *Id*.
[38] *Id*.
[39] *Id*. at 467.

conviction for theft was a felony and would have historically led to capital punishment or estate forfeiture and thus, "disarming Diaz fits within this tradition of serious and permanent punishment."[40] In its analysis, the court noted that "We emphasize that our holding is not only premised on the fact that Diaz is a felon. Simply classifying a crime as a felony does not meet the level of historical rigor required by *Bruen* and its progeny."[41] The Fifth Circuit then addressed the facial challenge to the statute, holding, "To sustain a facial challenge, 'the challenger must establish that no set of circumstances exists under which the statute would be valid.' This Diaz cannot do, because the statute is constitutional as applied to the facts of his own case."[42] The Court finds similarly for the reasons stated below.

Squire follows in Diaz's shoes. Squire and Diaz were each charged with the same crime, a violation of § 922(g)(1). Squire had, among other convictions, prior convictions for possession of stolen things, burglary, and unauthorized use of a motor vehicle—convictions very similar to Diaz's theft of a vehicle conviction.[43] Neither

---

[40] *Id.* at 470.

[41] *Id.* at 469.

[42] *Id.* at 471-72 (citing *Rahimi*, 602 U.S. at 692-93, 144 S. Ct. 1889, 219 L.Ed.2d 351).

[43] As the Fifth Circuit's decision in *Diaz* supports the denial of the Defendant's challenge, the Court need not address the Defendant's multitude of other prior convictions and whether they, too, serve as support for firearm regulation under § 922(g)(1). The Government makes several arguments regarding the Defendant's prior convictions for conspiracy to distribute heroin, distribution of heroin, conspiracy to possess a firearm with a controlled dangerous substance, and possession of a firearm with a controlled dangerous substance and analogizes those prior convictions to founding-era legislatures which punished the trafficking of contraband. *See* R. Doc. 36 at 10. The Court finds it unnecessary to address those arguments at this time. With that said, the Court notes that the Defendant's prior convictions include convictions for obstruction of justice and conspiracy to commit obstruction of justice. The Court's research points out the "relevantly similar" law of treason which, from common law to the founding-era laws, was considered to be one of the most "infamous crimes." Will Tress, *Unintended Collateral Consequences: Defining Felony in the Early American Republic*, 57 CLEV. ST. L. REV. 461, 465 (2009). Indeed, as early as 1796, New York enacted laws reserving the most severe punishment to only two crimes—murder and treason. *See* Act of Mar. 26, 1796, ch.30, 1796 N.Y. Laws 669. In 1829, New York enacted *The Revised Statutes of the State of New York* and classified categories of non-capital felonies, with one category being "Of Offences Affecting the Administration of Justice,

Squire nor Diaz had firearms on their body—Squire's firearm was found in his home; Diaz's firearm was in his vehicle. Both raised the same constitutional challenges to the same statute. Despite Squire's insistence to the contrary, the facts of this case are closely aligned with those of *Diaz*. The Court is therefore bound by, and adheres to, that precedent. To be clear, in conducting its own analysis, the Court finds a historical analogue to support the § 922(g)(1)'s prohibition. For these reasons, and for the additional reasons set forth in the Government's Opposition brief, the Court finds the Defendant's challenges to § 922(g)(1) are without merit.[44]

---

punishable by imprisonment in a state prison." *See* AN ACT CONCERNING CRIMES AND PUNISHMENTS; PROCEEDINGS IN CRIMINAL CASES; AND PRISON DISCIPLINE, IN 2 THE REVISED STATUTES OF THE STATE OF NEW-YORK, pt. II, ch. VII, 655 (Albany, Packard & Van Benthuysen 1829). Obstruction of Justice and Conspiracy to Obstruct Justice, violations of La. R.S. 14:130.1, which form the basis for two of the Defendant's prior convictions, includes a litany of acts committed which may or will affect criminal proceedings, similar to the non-capital felony of "Offences Affecting the Administration of Justice" enacted in New York in 1829. The Court is fully satisfied that those prior convictions fit within the tradition of serious and permanent punishment justifying firearm regulation.

[44] The Court finds no meaningful distinction between Diaz's firearm being found in his vehicle and Squire's firearm being found in his home. The Defendant's reliance on *District of Columbia v. Heller* for the proposition that the statute is unconstitutional as applied is misplaced. 554 U.S. 570, 128 S. Ct. 2783, 171 L.Ed.2d 637 (2008). The Defendant bases its reliance on *Heller* on the distinction made in that case between "keeping" arms and "bearing" arms. The Defendant seemingly argues that he did not "bear" arms; he only "kept" arms in his home. The Defendant's reading of that section of *Heller* misses the forest for the trees. Justice Scalia began with, "We turn first to the meaning of the Second Amendment." *Id.* at 576, 128 S. Ct. 2783, 171 L.Ed.2d 637. "Thus, the most natural reading of 'keep arms' in the Second Amendment if to 'have weapons' . . . 'Keep arms' was simply a common way of referring to possessing arms, for militiamen *and everyone else*." *Id.* at 582-83, 128 S. Ct. 2783, 171 L.Ed.2d 637. To the extent that the Defendant is attempting to distinguish his "keeping" arms to him not "bearing" arms, the argument misses. Again, as Justice Scalia pointed out, keeping arms simply means to possess them. Further, and importantly, in *Heller*, the Supreme Court made clear, "Like most rights, the right secured by the Second Amendment is not unlimited. From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose" and, further, "Nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill . . . ." *Heller*, 554 U.S. at 626, 128 S. Ct. 2783, 171 L.Ed.2d 637. The Defendant fails to address this language.

### B. The Defendant's Argument that the Statute Is Unconstitutionally Vague.

In his alternative argument, the Defendant argues that the statute is unconstitutional because it fails to provide fair notice of prohibited conduct. In support of this argument, the Defendant relies on decisions from several courts which deemed the statute unconstitutional as applied to certain subsets of felons.[45] The Defendant argues that this piecemeal approach leads to uncertainty and thus the statute is unconstitutionally vague. In response, the Government contends that "[W]hen a vagueness challenge does not involve First Amendment freedoms, we examine the statute only in light of the facts of the case at hand."[46]

The Court agrees with the Government. Indeed, the Defendant's "argument misunderstands a vagueness challenge because it challenges a Supreme Court ruling or rulings by other courts as vague instead of the law itself."[47] "A criminal statute survives our vagueness review if it "define[s] the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement."[48] A plain reading of the statute supports this finding and provides sufficient notice to ordinary people of the conduct that is prohibited. Further, while the Defendant asserts that three courts have deemed § 922(g)(1) unconstitutional as applied,[49] by

---

[45] R. Doc. 31-1 at 19.
[46] R. Doc. 36 at 12 (quoting *United States v. Edwards,* 182 F.3d 333, 335 (5th Cir. 1999)).
[47] *United States v. Conner*, No. 23-CR-54, 2023 WL 8474735, at *2 (E.D. La. Dec. 7, 2023) (internal citations omitted).
[48] *Edwards* at 335.
[49] R. Doc. 31-1 at 19 (citing *Range v. Att'y Gen. United States of America*, 69 F.4th 96, 103-06 (3d Cir. 2023); *Quailes*, No. 21-CR-176, 2023 WL 5401733, at *9-12 (M.D. Pa. Aug. 22, 2023); and *United States v. Forbis*, 687 F.Supp.3d 1170, 1176-79 (N.D. Okla. 2023)).

definition, those determinations only apply to those individuals. As the court noted in *Range v. Attorney General United States of America*, "Our decision today is a narrow one.[50] Bryan Range challenged the constitutionality of 18 U.S.C. § 922(g)(1) only as applied to him given his violation of 62 Pa. Stat. Ann. § 481(a)."[51] Finding merit in as-applied challenges does not render the enforcement of a statute arbitrary and discriminatory. Further, while not pointed out by the Defendant, the Court notes that numerous district courts, post-*Bruen*, have rejected facial and as-applied challenges to the constitutionality of § 922(g)(1).[52] Even if a split in authority could render a statute unconstitutionally vague, it is unclear how the Defendant was not given fair notice that his conduct was prohibited when many courts still consider §922(g)(1) constitutional. The Defendant's challenge to the statute as unconstitutionally vague fails.

### C. The Defendant's Argument that the Statute Exceeds Congress's Power Under the Commerce Clause.

The Defendant concedes that his final argument—that the statute exceeds Congress's power under the Commerce Clause—is foreclosed by the Fifth Circuit's decision in *United States v. Seekins*, in which the court held, "We have long held that

---

[50] 69 F.4th at 106.
[51] *Id.*
[52] *United States v. Johnson*, No. 22-CR-60, 2024 WL 3820380 (E.D. La. Aug. 14, 2024); *United States v. Ingram*, 623 F.Supp.3d 660 (D. S.C. 2022); *United States v. Cockerham*, No. 21-CR-6, 2022 WL 4229314 (S.D. Miss. Sept. 13, 2022); *United States v. Jackson*, No. 21-CR-51, 2022 WL 4226229 (D. Minn. Sept. 13, 2022); *United States v. Hill*, 629 F.Supp.3d 1027 (S.D. Cal. 2022); *United States v. Coombes*, 629 F.Supp.3d 1149 (N.D. Okla. 2022); *United States v. Collette*, 630 F.Supp.3d 841 (W.D. Tex. 2022); *United States v. Siddoway*, No. 21-CR-205, 2022 WL 4482739 (D. Idaho, Sept. 27, 2022); *United States v. Charles*, 633 F.Supp.3d 874 (W.D. Tex. 2022); *United States v. Price*, 635 F.Supp.3d 455 (S.D. W. Va. 2022)*; see also United States v. Gonzalez*, No. 22-CR-1242, 2022 WL 4376074 (7th Cir. Sept. 22, 2022); *United States v. Moore*, No. 23-CR-40, 2024 WL 2090150 (W.D. Pa. May 9, 2024).

§ 922(g) can be constitutionally applied where the 'in or affecting commerce' element is proved by showing the firearm had previously traveled across state lines without regard to the defendant's conduct."[53] It further explained, "There is no additional requirement that, to apply the law constitutionally, the government must prove some economic activity beyond the interstate movement of the weapon."[54] That decision remains binding precedent on this Court. Accordingly, the Defendant's third argument fails.

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that the Defendant Curtis Squire's Motion to Dismiss The Indictment[55] is **DENIED.**

New Orleans, Louisiana, December 10, 2024.

**WENDY B. VITTER**
**United States District Judge**

---

[53] 2022 WL 3644185, at *2.
[54] *Id.*
[55] R. Doc. 31.